UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ONE WORLD LABS, INC. ) | Case No. 15-21110 HRT |
| EIN: 27-1496136 ) | |
| ) | |
| Debtor. ) | |

**RESPONSE TO U.S. TRUSTEE'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS**

Debtor and debtor in possession, One World Labs, Inc. ("Debtor"), by and through its undersigned counsel, hereby responses to the U.S. Trustee's Limited Objection to Debtor's Motion for Order Authorizing Sale of Assets Free and Clear of Liens and Interests [ECF no. 45] (the "Response"), to provide the additional information the U.S. Trustee requested.

1. <u>How the assets were marketed prepetition</u>.

In May of 2015, Debtor's Board of Directors engaged Clear Creek Partners LLC, a Denver-based investment bank, to sell the business. Alex Ooms at Clear Creek led the process.

Clear Creek contacted twenty-eight (28) industry participants to solicit interest their interest in a potential sale of the business or its assets. Of that group, sixteen (16) wanted a follow-up conversation.

Working with and through Clear Creek, Debtor engaged in detailed discussions and presentations with these 16 interested entities. After these discussions and presentations, twelve (12) of the interested entities wanted to continue to be involved. As a result of that process, Debtor (with Clear Creek's advice and input) established a deadline of early July for the submission of "best and final" bids.

Prior to the "best and final" bid deadline, Optiv, Inc., a Denver-based cybersecurity firm (f/k/a Accuvant), that was one of 28 industry participants that Clear Creek had contacted, submitted a bid that offered no cash and proposed an earn out over a 10-year period. Debtor rejected that offer. Optiv then submitted a $150,000 cash bid (offering no earn out, but also no equity), subject to a unilateral 24-hour cutoff period in which it required Debtor to accept or else the bid/offer would expire. Debtor was unwilling to truncate the bidding process. Accordingly, Debtor and its board let that offer expire of its own terms.

Optiv did not submit another bid. Another bidder (whose identity is confidential) submitted a bid, which Debtor and its board accepted. After that bidder had conducted

exhaustive due diligence, and interacted extensively with Debtor, its CRO, it board, employees and the undersigned counsel, extending through late August, that potential buyer declined to proceed with the transaction.

As a result, Debtor was left with insufficient cash to continue to operate the business, especially in light of the maturing notes of approximately $600,000. In the face of the lack of any other interest expressed, and the fact that cash was dwindling, the Board elected to recommend to shareholders to file for Chapter 11.

2. <u>How the sale price or value of the assets were determined</u>.

The sales price was determined by the market. Debtor has been engaged in the sales process for approximately six (6) months. The market established the value of the assets, the best indicator of value. MNR Labs, LLC ("MNR") is the only person to enter into a binding purchase agreement to purchase the assets to be sold.

Although Debtor has received another offer, that offer is not contained in a binding enforceable purchase agreement. Debtor continues to work with that potential buyer with the end point being a binding purchase agreement that can lead to an auction.

Debtor understands that MNR's initial assessment as to the value of the assets is based on the unsuccessful marketing efforts described above, as well as the immediate need to recapitalize the business. All of the cash in the business is excluded from the assets to be purchased pursuant to the APA.

Debtor believes the sale price is fair because (a) the various hard assets (mostly used computer equipment, and some limited furniture and other equipment) has a salvage value at best; and (b) the software based on the perceived value to MNR if and only to the extent it is able to engage the current employees in the new entity and continue the development of the software.

3. <u>To what extent the negotiations were at arms-length</u>.

The negotiations were conducted entirely at arm's length.

As the Debtor set forth in its supplemental disclosure [ECF no. 36], the principals of MNR are Russell Cohen and Mark Turnage. Mr. Cohen served as the Debtor's CFO from Early 2014 until May 2105. Mr. Turnage served as the Debtor's CEO from January 2015 to May 2015. From May to October 2, 2015, both Messrs. Cohen and Turnage acted as independent consultants to Debtor.

When Debtor's prepetition marketing efforts were not successful, the board resigned effective October 2, 2012, and Debtor hired Thomas Kim of r2 Advisors, LLC as its Chief Restructuring Officer who then took control of the business.

MNR developed its offer to purchase and tendered it to Mr. Kim in his capacity as Debtor's Chief Restructuring Officer, and to Debtor's undersigned counsel.

MNR's initial offer was rejected. The parties negotiated and eventually reached the terms of the current asset purchase agreement. Each party was represented by separate, independent counsel in these negotiations.

4. <u>Valuation of the LLC Interest Component of the Purchase Price</u>.

The valuation is based on MNR's initial capital raise. Debtor believes that MNR has an excellent chance of successfully developing and marketing the core software at the heart of the purchased assets, which will ultimately return value to creditors.

Debtor's and MNR's intent of including the limited liability company interests as part of the purchase price was and is to provide Debtor's stakeholders with the means to participate economically in any upside MNR is able to generate with the purchased assets.

WHEREFORE, Debtor respectfully responds to UST's Limited Objection and seeks entry of an order approving the original Sale Motion

DATED this 24th day of November, 2015.

BIEGING SHAPIRO & BARBER LLP

By:   /s/ *Duncan E. Barber*
Duncan E. Barber # 16768
4582 S. Ulster St. Parkway, Suite 1650
Denver, Colorado 80237
Telephone:  720-488-5432
Telecopy:  720-488-7711
Email:  debarber@bsblawyers.com

402859