FILED
KENNETH S. GARDNER
CLERK

2015 NOV 23  PM 3: 37

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| In re: | Case No. 15-21110-HRT |
|---|---|
| ONE WORLD LABS, INC., | |
| Debtors | Chapter 11 |

### OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS

Optiv Security Inc. ("Optiv") files this Objection ("Objection") in response to the Motion for Order Authorizing the Sale of Assets Free and Clear of Liens and Interests [Dkt. #22] ("Sale Motion") filed by the debtor, One World Labs, Inc. ("Debtor"), and in support states as follows:

### I.      PRELIMINARY STATEMENT

Optiv files this Objection for the purpose of seeking entry of an order denying the Sale Motion and ordering the Debtor to conduct an auction and sale process so that Optiv has an opportunity to bid on the assets. Optiv has expressed its interest in purchasing certain assets of the Debtor for $250,000 in addition to cure amounts, if any, up to $14,319, for those contracts on Exhibit H (as described below) that Optiv elects to assume. In other words, Optiv is willing to pay five times the cash purchase price set forth in the asset purchase agreement pending in the Sale Motion, resulting in a substantial increase in proceeds available to creditors of the estate.

## II. BACKGROUND

### A. Bankruptcy Case

1. On October 2, 2015, ("Petition Date"), the Debtor commenced this bankruptcy case ("Bankruptcy Case") by filing its voluntary chapter 11 petition under Title 11 of the United States Bankruptcy Code ("Bankruptcy Code").

2. On November 5, 2015, the Office of the United States Trustee ("UST") appointed an Official Committee of Unsecured Creditors [Dkt. #31] ("Committee"). On November 12, 2015, the UST filed its notice that the Committee was dissolved after the Committee members informed the UST that they no longer wished to serve on the Committee [Dkt. #39].

3. No trustee or examiner has been appointed in this Bankruptcy Case and the Debtor continues to operate its business as a debtor in possession under section 1107(a) of the Bankruptcy Code.

### B. Sale Motion

1. On October 23, 2015, the Debtor filed its Sale Motion seeking to sell substantially all of its assets free and clear of all liens, claims, encumbrances and interests, pursuant to sections 363(b) and (f) of the Bankruptcy Code. The assets the Debtor proposes to sell include its intellectual property, intangible property, books, records, third party software, assumed contracts and contract rights. *See* Sale Motion, Sections 5, 6 and Exhibits A-D, and H.

2. The proposed purchaser of the assets is MNR Labs, LLC ("MNR"). MNR has entered into an asset purchase agreement with the Debtor ("MNR APA") to purchase the assets for an amount comprised of: (a) $50,000.00; (b) ten (10%) of MNR Labs' limited liability company membership interests, and (c) payment of all cure amounts with respect to the Assumed

Contracts, in the amounts set forth in Exhibit H to the MNR APA. The MNR APA is not the product of Court approved bid procedures, stalking horse, or auction, but is, instead, premised upon the Debtor's unsuccessful pre-petition marketing efforts to sell the assets and its belief that MNR is the only party willing to purchase the assets. *See* Sale Motion, Section 3.3.

3. As a result, the MNR APA is not subject to higher and better offers through an approved auction process, however, an auction is contemplated if the Court orders an auction after a party (*i.e.* Optiv) expresses interest in purchasing assets by filing an objection to the Sale Motion. *See* Sale Motion, Section 3.3. *Id.* In that event, the MNR APA contains an "Auction Contingency" proposing certain bid procedures whereby MNR would become the stalking horse. *Id.*

4. Specifically, the bid procedures proposed by the Debtor include: (a) requiring a bidder to provide evidence of its ability to close on the transaction, (b) establishing $50,000 as the initial overbid amount, and (c) establishing $25,000 for additional incremental overbids. *See* Sale Motion, Sections 3.4.1. and 3.4.2. In addition, the procedures contemplate providing MNR with a breakup fee, not to exceed $30,000, in the event it is not the successful bidder at the auction. *See* Sale Motion, Section 3.5.

### III. LEGAL STANDARD

1. "The purpose of § 363 bankruptcy auction is to attain the highest and best offer for the assets sold and serve the best interests of the estate and its creditors." *In re W. Biomass Energy LLC*, No. 12-21085, 2013 WL 4017147, at *2 (Bankr. D. Wyo. Aug. 6, 2013) (stating the court has "broad discretion" to reopen auction so as "[t]o maximize the proceeds available to creditors").

2. In order to satisfy the purpose of section 363, a court must "consider whether the [current] proposal is the best among all alternatives that are brought to its attention. . . ." *In re Buerge*, No. BAP KS-12-074, 2014 WL 1309694, at *16 (B.A.P. 10th Cir. Apr. 2, 2014) (quoting *In re Engman*, 395 B.R. 610, 629 (Bankr. W.D. Mich. 2008) (holding bankruptcy court "abused its discretion by not considering whether a private auction or [debtor's offer] was preferable to the proposed sale"). "[T]he requirement of court approval means that the responsibility ultimately is the court's to assure that optimal value is realized by the estate under the circumstances." *Id.* at *17. Indeed, once an alternative offer for the assets is made known to a court, it has an obligation to consider an auction as an alternative to the proposed sale. *Id.*

### IV. OBJECTION AND REQUEST FOR AUCTION

1. It is generally accepted that the best way to determine the market value for a debtor's assets, and maximize the value of those assets for the creditors estate, is to conduct an auction. *In re Buerge*, 2014 WL 1309694, at *12 n. 87 (listing other bankruptcy court decisions that "suggest the best way to determine a fair price is to have an open auction") (citing *Bank of Am. Nat. Trust and Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457 (1999) (acknowledging "the best way to determine value is exposure to a market" rather than a determination by a bankruptcy judge); *In re Excello Press, Inc.*, 890 F.2d 896, 905 (7th Cir. 1989) (price obtained from commercially reasonable auction is the market value); *In re Boston Generating, LLC*, 440 B.R. 302, 323 (Bankr. S.D.N.Y. 2010) ("highest and best offer" after a robust, open, and fair process reflected the asset's market value)).

2. Section 3.3 of the Sale Motion provides an auction contingency in the event a party other than MNR expresses an interest in purchasing the Debtor's assets. *See* Sale Motion,

Section 3.3. Optiv now objects to the Sale Motion for the purpose of requesting an auction for the sale of the Debtor's assets and establishing other customary sale procedures in connection with the auction process. Optiv believes the that purchase price offered by MNR undervalues the Debtor's assets and that the highest and best offer for the assets—and the greatest return to the estate's creditors—is only possible if an auction is conducted.

3. Optiv does not dispute the Debtor's representation that it engaged in extensive pre-petition marketing efforts to sell its assets. Optiv was a part of certain pre-petition sale discussions and considered purchasing certain assets of the Debtor over one year ago, but the Debtor and Optiv were not able to reach an agreement regarding the assets and a sale was never consummated. Optiv has, since learning of the Sale Motion, communicated extensively with the Debtor regarding the limited due diligence Optiv requires to consider the value of the assets.[1] Optiv believes that, with continued cooperation with the Debtor, all necessary due diligence materials can be obtained and reviewed in advance of an auction date.

Upon concluding its due diligence review, and subject to the Court scheduling an auction for the Debtor's assets, Optiv intends to make an opening bid of $250,000 in addition to cure amounts, if any, up to $14,319, for those contracts on Exhibit H (as described below) that Optiv elects to assume. As a result, Optiv supports entry of a bid procedure order consistent with "Bid Procedures" proposed by the Debtor and MNR in Section 3.4. of the MNR APA. In addition, Optiv supports entry of a bid procedures order and scheduling an auction and sale hearing on an expedited basis.

---

[1] The Debtor provided Optiv with due diligence materials during the pre-petition sales process, but that was over a year ago and Optiv destroyed those materials as required by a confidentiality agreement governing that process.

## V. CONCLUSION

Optiv requests entry of an order (i) denying the Sale Motion to the extent it seeks approval of the sale of assets to MNR on the terms set forth in the MNR APA, (ii) approving the bid procedures set forth in Section 3.3 of the MNR APA on an expedited basis (iii), scheduling an immediate auction of the Debtor's assets, and (iv) scheduling an expedited hearing on the approval of the successful bidder at auction pursuant to a sale motion filed by the Debtor.

Dated November 23, 2015

Respectfully submitted,

By: _____
Matthew J. Ochs, #31713
HOLLAND & HART LLP
555 Seventeenth St., Suite 3200
P.O. Box 8749
Denver, CO 80201-8749
Telephone: (303) 295-8000
mjochs@hollandhart.com

*Attorneys for Optiv Security Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2015, I served a copy of the foregoing to the following by:

☒ U.S. Mail, postage prepaid
☐ Hand Delivery
☐ Fax
☒ Electronic Mail Service

Duncan Barber
4582 S. Ulster Street Pkwy
Suite 1650
Denver, CO 80237
dbarber@bsblawyers.com

Thomas M. Kim
1350 17th Street, Suite 206
Denver, Colorado 80202
tkim@r2llc.com

Andrew J. Petrie
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202
PetrieA@ballardspahr.com

Alison Goldenberg
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294
Alison.Goldenberg@usdoj.gov

